OGOMORI & YOSHIMOTO, LLP

NATHAN H. YOSHIMOTO          #6352-0
nyoshimoto@hi-lawyers.com
DONNA A.O. YOSHIMOTO         #6234-0
dyoshimoto@hi-lawyers.com
JASON H. FIEMAN             #9882-0
jfieman@hi-lawyers.com
TREVOR N. TAMASHIRO         #9584-0
ttamashiro@hi-lawyers.com
201 Merchant Street, Suite 2440
Honolulu, Hawaii  96813
Telephone:  (808) 695-4500
Facsimile:  (808) 695-4599

Attorneys for Defendant
MV&P INTERNATIONAL INC.

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2015 MAY 14  PM 2: 50

H. CHING
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA, a Hawaii nonprofit corporation, by its Board of Directors,<br><br>        Plaintiffs,<br><br>      vs.<br><br>PENINSULA HAWAII KAI, LLC, a Hawaii limited liability company; HEARTHSTONE, INC., a California corporation; STANFORD CARR DEVELOPMENT, LLC, a Hawaii limited liability company; HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC., a Hawaii corporation; ROBERT M. KAYA BUILDERS, INC., a Hawaii corporation; MVE & PARTNERS, INC., a California corporation; TOFT, WOLFF, FARROW, INC., a California corporation; INTERNATIONAL ARCHITECTURAL GROUP, LLC, aka International Architectural Products, Inc., International Window-Northern | CIVIL NO. 10-1-1751-08 (JHC)<br>(Contract; Construction Defect; Other)<br><br>DEFENDANT MV&P INTERNATIONAL INC.'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT; EXHIBIT "A"; CERTIFICATE OF SERVICE |

I do hereby certify that this is a full, true and correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

{08223-1001-00042299-1}

California, International Window Corporation,
International Window-Arizona, Inc., United
States Aluminum Corporation, United States
Aluminum Corporation-Illinois, United States
Aluminum Corporation-Carolina, Raco
Interior Products, Inc., International Extrusion
Corporation, International Extrusion
Corporation-Texas, and/or International
Aluminum Corporation (collectively "AIG");
FORTIFIBER CORPORATION dba Fortifiber
Building Systems Group SIKA
CORPORATION dba Sika Corporation U.S.;
MV&P INTERNATIONAL INC.; and DOES
7-250,

        Defendants.

## DEFENDANT MV&P INTERNATIONAL INC.'S NOTICE OF REMOVAL
## TO THE UNITED STATES DISTRICT COURT

TO:    THE CLERK OF THE CIRCUIT COURT OF THE FIRST CIRCUIT,
       STATE OF HAWAII

PLEASE TAKE NOTICE that Defendant MV&P International Inc. ("MVP") filed a

Notice of Removal in the United States District Court for the District of Hawai'i. A true and

correct copy of the Notice of Removal is attached hereto as Exhibit "A." Said Notice of Removal

was filed on May 8, 2015, with the Clerk of the United States District Court for the District of

Hawaii, pursuant to the provisions of Title 28 United States Code §§ 1331, 1441 and 1446.

Pursuant to Title 28 United States Code §1446(d), this Court shall take no further action herein

with respect to this entire civil action.

\

 \

\

\

\

DATED:  Honolulu, Hawaii, _____MAY 1 4 2015_____.

OGOMORI & YOSHIMOTO, LLP

_____
NATHAN H. YOSHIMOTO
DONNA A.O. YOSHIMOTO
TREVOR N. TAMASHIRO
JASON H. FIEMAN

Attorneys for Defendant
MV&P INTERNATIONAL INC.

# Exhibit "A"

*LEK only - original plus one copy invited*

# ORIGINAL

**OGOMORI & YOSHIMOTO, LLP**

| | |
|---|---|
| NATHAN H. YOSHIMOTO | #6352-0 |
| nyoshimoto@hi-lawyers.com | |
| DONNA A.O. YOSHIMOTO | #6234-0 |
| dyoshimoto@hi-lawyers.com | |
| JASON H. FIEMAN | #9882-0 |
| jfieman@hi-lawyers.com | |
| TREVOR N. TAMASHIRO | #9584-0 |
| ttamashiro@hi-lawyers.com | |

201 Merchant Street, Suite 2440
Honolulu, Hawaii 96813
Telephone: (808) 695-4500
Facsimile: (808) 695-4599

Attorneys for Defendant
MV&P INTERNATIONAL INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 0 8 2015

at 4 o'clock and 04 min. P M
SUE BEITIA, CLERK

USDC HAW 8 '15 4:05PM

## IN THE UNITED STATES DISTRICT COURT

### FOR THE STATE OF HAWAI'I

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA, a Hawaii nonprofit corporation, by its Board of Directors,<br><br>Plaintiffs,<br><br>vs.<br><br>PENINSULA HAWAII KAI, LLC, a Hawaii limited liability company; HEARTHSTONE, INC., a California corporation; STANFORD CARR | CIVIL NO. CV15 00170 LEK KSC<br>(Contract; Construction Defect; Other)<br><br>DEFENDANT MV&P INTERNATIONAL INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1331 (FEDERAL QUESTION); EXHIBITS "1" – "6"; CERTIFICATE OF SERVICE |

{08223-1001-00042573-1}

**Exhibit "A"**

DEVELOPMENT, LLC, a Hawaii
limited liability company; HAWAIIAN
DREDGING CONSTRUCTION
COMPANY, INC., a Hawaii
corporation; ROBERT M. KAYA
BUILDERS, INC., a Hawaii
corporation; MVE & PARTNERS,
INC., a California corporation; TOFT,
WOLFF, FARROW, INC., a California
corporation; INTERNATIONAL
ARCHITECTURAL GROUP, LLC,
aka International Architectural
Products, Inc., International Window-
Northern California, International
Window Corporation, International
Window-Arizona, Inc., United States
Aluminum Corporation, United States
Aluminum Corporation-Illinois, United
States Aluminum Corporation-Carolina,
Raco Interior Products, Inc.,
International Extrusion Corporation,
International Extrusion Corporation-
Texas, and/or International Aluminum
Corporation (collectively "AIG");
FORTIFIBER CORPORATION dba
Fortifiber Building Systems Group;
SIKA CORPORATION dba Sika
Corporation U.S.; MV&P
INTERNATIONAL INC.; and DOES
7-250,

       Defendants.

DEFENDANT MV&P INTERNATIONAL INC.'S
NOTICE OF REMOVAL OF ACTION PURSUANT TO
28 U.S.C. § 1441(B) (FEDERAL QUESTION)

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that DEFENDANT MV&P INTERNATIONAL

INC. ("MVP") by and through its attorneys, Ogomori & Yoshimoto, LLP, hereby

removes the action entitled The Association of Apartment Owners Of The Hawai'i

Kai Penninsula, et. al., v. Penninsula Hawaii Kai, LLC, et. al., Civil No. 10-1-

1751-08 (JHC), in the Circuit Court of the First Circuit, State of Hawai'i to the

United States District Court for the District of Hawai'i, pursuant to 28 U.S.C. §

1441 and 1446.  MVP's Notice of Removal is based on the following:

**Relevant Procedural History**

1.     On April 7, 2015, Plaintiffs THE ASSOCIATION OF APARTMENT

OWNERS OF THE HAWAII KAI PENNINSULA and BOARD OF DIRECTORS

OF ASSOCIATION OF APARTMENT OWNERS OF THE Hawai'i KAI

PENINSULA, an unincorporated association, by its Board of Directors

(collectively referred to as "HKP") and Defendants PENINSULA HAWAII KAI,

LLC, HEARTHSTONE, INC. and STANFORD CARR DEVELOPMENT, LLC

(collectively referred to as "Developer Defendants"), through their respective

counsel, filed a Third Stipulation Certifying Doe Defendants; Order, wherein MVP

was identified and certified as Defendant DOE 103 in the Complaint. See Exhibit

"1."

2.     On or around April 14, 2015, HKP sent MVP a letter asking that MVP execute and return the enclosed Consent and Acceptance of Service. See Exhibit "2."

3.     On April 11, 2011, HKP filed their First Amended Complaint for Damages ("FAC"). See Exhibit "3."

4.     The FAC alleges defects in the construction and design of that certain master planned development entitled Hawaii Kai Peninsula, which consists of condominiums, townhouses and single family homes and appurtenant common elements, including 620 residential units, situated in Honolulu, Island of Oahu, Hawaii (the "Project"). See Exhibit "3."

5.     On or about May 24, 2013, the Circuit Court of the First Circuit, State of Hawaii, filed its Case Management Order Re Pleadings, Discovery, Pre-Trial and Settlement Matters. See Exhibit "4."

6.     On the date of this filing, and served concurrently herewith, MVP executed the Consent and Acceptance of Service thereby accepting formal service of the Complaint. See Exhibit "5."

### Grounds for Removal

7.     This Court has original jurisdiction of this action under federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

8.     Pursuant to 28 U.S.C. § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States." In addition, pursuant to 28 U.S.C. § 1441(a) "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, maybe removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

### Federal Question Jurisdiction

9.      Upon information and belief, HKP has retained the Austin Sloat of the firm Neumann, Sloat, Blanco, Architects, LLP ("Sloat") as an expert to provide expert opinions in support of HKP's claims and damages on the Project.

10.     In Sloat's latest Preliminary Investigation Report dated April 1, 2015 ("Sloat's 2015 Report"), Sloat claims that the Project failed to conform to the requirements of the Federal Fair Housing Act. See Exhibit "6" (excerpts of Sloat's 2015 Report). More specifically, Sloat's 2015 Report includes an evaluation that "[t]he Fair Housing Act is federal legislation and it is incumbent on the designers and builders to comply with the applicable accessibility requirements" and recommends that "[w]here deficiencies in compliance exist they should be corrected." Id. at 34. In addition, Sloat alleges that the Project failed to comply with the Federal Fair Housing Act by failing to provide:

    a.      An accessible route throughout the site (id. at 35);

    b.      An accessible route into and through units (id. at 35-37);

    c.      Backing for grab bars (id. at 37);

    d.     An adaptable kitchen (id. at 37-38); and

    e.     Accessible unit features (id. at 38).

11.    Based on the foregoing, it is clear that HKP is asserting a claim for damages against the Defendants and MVP under the Federal Fair Housing Act.

12.    A claim under the Fair Housing Act presents a federal question for purposes of federal question jurisdiction. Jackson v. Dugger, 931 F.2d 712 (11th Cir. 1991); see also McKinley v. Wilson, 2012 U.S. Dist. LEXIS 87516 at *3 (D. Haw. 2012) (noting that the basis of jurisdiction in the case was federal question because the plaintiffs alleged violations of the Fair Housing Act).

## Pendent/Supplemental Jurisdiction

13.    Pursuant to 28 U.S.C. § 1367, "...in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

14.    Stated another way, "[p]endent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is 'a common nucleus of operative fact between the state and federal claim.'" Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir. 1991).

15.     At this time, the relevant factors of "economy, convenience, fairness and comity" are better served by this Court recognizing pendent jurisdiction. Id. As such, both the Fair Housing Act claims and the state law claims in the lawsuit must be removed to this Court.

## Compliance With Removal Procedure

16.     28 U.S.C. § 1446 (b) (Procedure for removal of civil actions), states, in relevant part:

> (b) Requirements; generally.
> (1)  The notice of removal of a civil action or proceeding shall be filed **within 30 days after the receipt by the defendant, through service or otherwise**, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. . . .

28 U.S.C. § 1446 (emphasis added).

17.     The 30 day window is triggered by formal summons and complaint and not just by mere receipt, "unattended by any formal service." Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 348, 119 S.Ct. 1322, 1325 (1999).  In other words, "actual notice of the action is insufficient; rather, the defendant must be 'notified of the action, and brought under a court's authority, by formal process,' before the removal period begins to run." Quality Loan Serv. Corp. v. 24702 Pallas Way, 635 F.3d 1128, 1133 (9th Cir. 2011) (citing Murphy Bros., supra).

18.    The holding in <u>Murphy Bros.</u> was subsequently adopted by the United States District Court for the District of Hawai'i in <u>Hawaii v. Abbott Labs., Inc.,</u> 469 F. Supp. 2d 842 (D. Haw. 2006), wherein this Court stated the following regarding the time for filing a notice of removal:

> To be timely, a notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b). A defendant's right to remove is triggered only by formal process, "not by mere receipt of the complaint unattended by any formal service." <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,</u> 526 U.S. 344, 348, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999). On its face, Defendants' removal action is timely. The notice of removal was filed on August 10, 2006, less than thirty days after the first Defendant was formally served on July 21.

<u>Hawaii v. Abbott Labs., Inc.,</u> 469 F. Supp. 2d 842, 854 (D. Haw. 2006).

19.    Based on the foregoing authorities, there is absolutely no question that MVP meets the applicable time frame for removal.  In the instant case, no formal service was ever made upon MVP.  Instead, MVP accepted service upon the execution of the Consent and Acceptance of Service that was filed on the same date as this Notice for Removal. <u>See</u> Exhibit "5." Therefore, MVP has removed this action within 30 days of service pursuant to 28 U.S.C. § 1446.

20.    Additionally, pursuant to 28 U.S.C. § 1446(d), Counsel for MVP certifies that it will file a copy of this Notice of Removal with the Clerk of the

Circuit Court of the First Circuit, State of Hawaii, and give notice of same to counsel for all parties thereto.

21.    Defendants also served this Notice of Removal upon all parties on the date set forth in the certificate of service.

22.    The United States District Court for the State of Hawai'i is the district and division within which the State court action is pending.

23.    Pursuant to 28 U.S.C. § 1446(a), and to the best of MVP's knowledge, Exhibits "1," "3," and "4" constitutes all of the process, pleadings and orders served upon MVP at the time of this removal.

24.    Accordingly, MVP has satisfied all the removal prerequisites of 28 U.S.C § 1446.

## Preservation of Defenses

25.    By filing this Notice of Removal, MVP does not waive any defense which may be available to them.


DATED:  Honolulu, Hawaii, May 8, 2015.


OGOMORI & YOSHIMOTO, LLP

NATHAN H. YOSHIMOTO
DONNA A.O. YOSHIMOTO
JASON H. FIEMAN
TREVOR N. TAMASHIRO

Attorneys for Defendant
MV&P INTERNATIONAL INC.

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2015 APR -7  AM 11: 45

H. CHING
CLERK

McKEON SHELDON MEHLING
A Limited Liability Law Company

WILLIAM M. McKEON      3726-0
KERI MEHLING           8423-0
2145 Kaohu Street, Suite 203
Wailuku, Hawaii 96793
Telephone:  (808) 242-6644
Facsimile:  (808) 244-9775

TYLER P. BERDING
Berding & Weil LLP
2175 N. California Blvd., Suite 500
Walnut Creek, CA 94596
Telephone:  (925)838-2090
Facsimile   (925)820-5592

Attorneys for Plaintiffs
The Association of Apartment Owners
Of The Hawaii Kai Peninsula and Board
Of Directors of the Association of Apartment
Owners of The Hawaii Kai Peninsula

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA, an unincorporated association, by its Board of Directors, <br><br> Plaintiffs, <br><br> vs. <br><br> PENINSULA HAWAII KAI, LLC, A Hawaii limited liability company; HEARTHSTONE, INC., a California corporation; STANFORD CARR DEVELOPMENT, LLC, a Hawaii limited liability company; HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC., a | ) CIVIL NO.: 10-1-1751-08 (JHC) <br> ) (Contract; Construction Defect; Other) <br> ) <br> ) <br> ) THIRD STIPULATION CERTIFYING DOE <br> ) DEFENDANTS; ORDER <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) TRIAL DATE: March 28, 2016 <br> ) JUDGE: Honorable Jeannette H. Castagnetti <br> ) |

I do hereby certify that this is a full, true and correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

**Exhibit "1"**

RECEIVED    MAR 16 2015
LDB (NIA)

Hawaii corporation; ROBERT M. KAYA )
BUILDERS, INC., a Hawaii corporation; )
MVE & PARTNERS, INC., a California )
corporation; TOFT, WOLFF, FARROW, INC., )
a California corporation; INTERNATIONAL )
ARCHITECTURAL GROUP, LLC, aka )
International Architectural Products, Inc., )
International Window-Northern California, )
International Window Corporation, International )
Window-Arizona, Inc., United States Aluminum )
Corporation, United States Aluminum )
Corporation-Illinois, United States Aluminum )
Corporation-Carolina, Raco Interior Products, )
Inc., International Extrusion Corporation, )
International Extrusion Corporation-Texas, )
and/or International Aluminum Corporation )
(collectively "AIG"); and DOES 7-250, )
                                        )
        Defendants.                     )
                                        )
_____    )
                                        )
PENINSULA HAWAII KAI, LLC, a Hawaii     )
Limited liability company; HEARTHSTONE, )
INC., a California corporation; STANFORD )
CARR DEVELOPMENT, LLC, a Hawaii         )
Limited liability company,              )
                                        )
        Third-Party Plaintiffs,         )
                                        )
    vs.                                 )
                                        )
MV&P INTERNATIONAL INC.,                )
                                        )
        Third-Party Defendant.          )
                                        )

S:\Accts\A-K\Hawaii Kai Peninsula\SCD Litigation\Pleadings\Stip Certifying DOE
Defendants\150123 Third Stip Certifying DOE Defendants.docx

## THIRD STIPULATION CERTIFYING DOE DEFENDANTS

Plaintiffs The Association of Apartment Owners of the Hawaii Kai Peninsula and Board

of Directors of the Association of Apartment Owners of The Hawaii Kai Peninsula, by its Board

of Directors (collectively, "Plaintiffs"), and Defendants Peninsula Hawaii Kai, LLC,

Hearthstone, Inc., Stanford Carr Development, LLC, Hawaiian Dredging Construction

2

Company, Inc., and Robert M. Kaya Builders, Inc., (collectively, "Defendants"), through their respective counsel, hereby stipulate pursuant to Rule 17(d), Hawai'i Rules of Civil Procedure, as follows:

    1.    Fortifiber Corporation dba Fortifiber Building Systems Group, a California corporation, is hereby identified and certified as Defendant DOE 127 in the First Amended Complaint For Damages, filed herein on April 11, 2011 ("FAC");

    2.    Sika Corporation dba Sika Corporation U.S., a New Jersey corporation, is hereby identified and certified as Defendant DOE 128 in the FAC; and

    3.    MV&P International Inc., a California corporation, is hereby identified and certified as Defendant DOE 103 in the FAC.

DATED: Wailuku, Maui, Hawai'i, _March 12, 2015_.


_____
WILLIAM M. McKEON
KERI C. MEHLING
TYLER P. BERDING
Attorneys for Plaintiff
The Association of Apartment Owners of
the Hawaii Kai Peninsula and Board of
Directors of the Association of Apartment
Owners of the Association of Apartment
Owners of the Hawaii Kai Peninsula


DATED: Honolulu, Hawai'i, MAR 0 9 2015 _____


_____
CID H. INOUYE
KRISTI L. ARAKAKI
Attorneys for Defendants
Peninsula Hawaii Kai, LLC, Hearthstone,
Inc., Stanford Carr Development, LLC,
Hawaiian Dredging Construction Company,
Inc., and Robert M. Kaya Builders, Inc.

APPROVED AND SO ORDERED:

APR – 2 2015

JEANNETTE H. CASTAGNETTI

SEAL

FIRST CIRCUIT COURT

JUDGE OF THE ABOVE-ENTITLED COURT

The Association of Apartment Owners of The Hawaii Kai Peninsula and Board of Directors of the Association of Apartment Owners of The Hawaii Kai Peninsula, an unincorporated association, by its Board of Directors v. Peninsula Hawaii Kai, LLC, a Hawaii limited liability company; Civil No. 10-1-1751-08 (JHC); THIRD STIPULATION CERTIFYING DOE DEFENDANTS; ORDER

# MCKEON SHELDON MEHLING

**A Limited Liability Law Company**

2145 Kaohu Street, Suite 203
Wailuku, Hawaii 96793
p. 808.242.6644 | f. 808.244.9775
www.msmhawaii.com

April 14, 2015

Via Email (nyoshimoto@hi-lawyers.com)

Nathan Yoshimoto, Esq.
Ogomori & Yoshimoto, LP
925 Bethel St., Ste. 304
Honolulu, HI 96813

      Re:    The Association of Apartment Owners of Hawaii Kai Peninsula v.
               Peninsula Hawaii Kai, LLC, et al.; Civil No. 10-1-1751-08 (JHC)

Dear Nathan:

      As you know, I represent and write on behalf of Plaintiff The Association of Apartment Owners of Hawaii Kai Peninsula in the above-entitled matter.

      I understand you represent Defendant MV&P International Inc. ("MV&P"). Defendant MV&P was recently identified and certified as a Doe Defendant by way of stipulation. A copy of the Third Stipulation Certifying Doe Defendants; Order, entered on April 7, 2015, is enclosed for your information and file. On September 11, 2014, our office provided you with certified copies of the First Amended Complaint for Damages; Demand for Jury Trial; Summons, filed herein on April 11, 2011, and the Case Management Order re Pleadings, Discovery, Pre-Trial and Settlement Matters; Exhibits "A" – "G", filed herein on May 23, 2013. I am therefore not resending these documents to you since you already have them.

      I ask that you please execute and return the enclosed Consent and Acceptance of Service in the event you are authorized to accept service on MV&P's behalf. If you are not so authorized, please let us know as soon as possible.

               Sincerely,

               William M. McKeon
               McKeon Imlay Mehling
               A Limited Liability Law Company

Enclosures: As noted
Cc: Cid Inouye, Esq.
    Tyler Berding, Esq.
S:\Accts.A-K\Hawaii Kai Peninsula\SCD Litigation\Corr\Yoshimoto\150414 Ltr to N. Yoshimoto re AOS.docx

**Exhibit "2"**

3

4

37099

McKEON IMLAY MEHLING
A Limited Liability Law Company

WILLIAM M. McKEON    3726-0
KERI MEHLING          8423-0
2145 Kaohu Street, Suite 203
Wailuku, Hawaii 96793
Telephone:  (808) 242-6644
Facsimile:  (808) 244-9775

TYLER P. BERDING
Berding & Weil LLP
2175 N. California Blvd., Suite 500
Walnut Creek, CA 94596
Telephone:  (925)838-2090
Facsimile   (925)820-5592

Attorneys for Plaintiffs

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2013 MAY 24  PM 1: 05

A. MARPLE
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA, an unincorporated association, by its Board of Directors, | ) CIVIL NO.: 10-1-1751-08 (JHC) <br> ) (Contract; Construction Defect; Other) <br> ) <br> ) CASE MANAGEMENT ORDER RE <br> ) PLEADINGS, DISCOVERY, PRE-TRIAL <br> ) AND SETTLEMENT MATTERS; EXHIBITS <br> ) "A" – "G" <br> ) |
| Plaintiffs, | ) <br> ) <br> ) |
| vs. | ) <br> ) |
| PENINSULA HAWAII KAI, LLC, A Hawaii limited liability company; HEARTHSTONE, INC., a California corporation; STANFORD CARR DEVELOPMENT; LLC, a Hawaii limited liability company and DOES 1-250, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) NO TRIAL DATE SET <br> ) <br> ) |

2013 MAY 20  PM 1: 44

1ST JUDICIAL CIRCUIT
STATE OF HAWAII
5TH DIVISION

X:\Aox\A-X\Hawaii Kai Peninsula\Pleadings\Case Management Order\191113 CMO - FINAL.doc

I do hereby certify that this is a full, true, and correct copy of the original.

Clerk, Circuit Court, First Circuit

**Exhibit "4"**

SEP 1 8 2014

Case 1:15-cv-00170-LEK-KSC   Document 20-8   Filed 06/04/15   Page 24 of 77   PageID #:
747
Case 1:15-cv-00170-LEK-KSC   Document 1-4   Filed 05/08/15   Page 3 of 31   PageID #: 97

## CASE MANAGEMENT ORDER RE

## PLEADINGS, DISCOVERY, PRE-TRIAL AND SETTLEMENT MATTERS

This is a construction defect case involving the condominium project known as "The Hawaii Kai Peninsula" located in Hawaii Kai, Oahu (the "Project"). The Project consists of five different product types and 630 units. This action involves three of those product types (The Colony, The Villas and The Cottages) and a total of 535 apartments, as well as the common areas and public buildings of the entire Project. The claims involve numerous parties: the developers, design professionals, contractors, subcontractors, suppliers and manufacturers of the Project. The investigation and discovery related to the claims involves numerous expert and lay witnesses, tens of thousands of documents and issues that are numerous, complicated and technical. As such, the parties have stipulated to this Case Management Order Re Pleadings, Discovery, Pre-Trial And Settlement Matters ("Order") for the purpose of promoting efficient and economical case management and to assist the parties in resolving their disputes short of trial through mediation, thereby reducing the costs and difficulties associated with discovery and litigation for all concerned.

Therefore, Plaintiff THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA ("Plaintiffs"), through their counsel, McKeon Imlay Mehling, A Limited Liability Law Company and Berding & Weil, LLP, and Defendant PENINSULA HAWAII KAI, LLC, a Hawaii limited liability company, HEARTHSTONE, INC., a California corporation, and STANFORD CARR DEVELOPMENT LLC ("Defendants"), by and through its counsel, O'Connor Playdon & Guben, stipulate, and for good cause shown, THE COURT ORDERS, as follows:

1.   <u>Service of This Order.</u>  A copy of this Order, and all subsequent orders, shall be served with the complaint, third party complaint and/or any cross-complaint bringing in a new party.

2.   <u>Service of Cross-Complaints.</u>  The parties shall use their best efforts to file their third party and/or cross-complaints and serve third-party defendants within ninety (90) days of the receipt of Plaintiffs' experts' preliminary and/or supplemental reports and the filing of this Order, or thirty (30) days from the date of being served with any complaint, cross-complaint, third-party complaint, or receipt of Plaintiffs' experts' preliminary and/or supplemental reports, whichever is later.  Defendants reserve the right to request a reasonable amount of additional time to file and serve third party and/or cross-complaints, which Plaintiffs shall not unreasonably refuse to grant.  Leave of Court to add a new party shall not be required where every party who has appeared herein has signed a stipulation to that effect.  The time to add new parties may be extended by the Court upon motion with good cause being shown.  The failure to serve within the time limits set forth herein is not jurisdictional and shall not be construed as a defense to any action brought against any defendant or cross-defendant.

3.   <u>Notice of Appearance.</u>  Each party who has not made an appearance in this case as of the filing of this Order shall file a written Notice of Appearance in Lieu of Answer ("Notice of Appearance") with the Court and also shall sign and serve on all counsel the attached Joinder In Case Management Order Re Pleadings, Discovery, Pre-Trial And Settlement Matters (Exhibit "A"), within thirty (30) days of being served with any complaint or cross-complaint.  Such Notice shall identify with specificity each party which counsel purports to represent, and it shall include the complete address and fax number of counsel for the appearing party.  Each party who has filed an answer at the time of the filing of this Order shall be deemed to have complied with

2

this provision. Nothing in this Order shall be construed as modifying or otherwise affecting any order granting pro hac vice admission of counsel.

4.   **Pleadings.**

(a)   Upon appearing in the action by the filing of a Notice of Appearance, or for those parties who appeared in the action previously, it shall hereafter be deemed that: (1) all defendants and cross-defendants have filed and served cross-complaints for implied equitable indemnity and for a determination of comparative negligence against all other defendants and cross-defendants; (2) all allegations of the complaint and such cross-complaints are generally denied; and (3) all affirmative defenses listed in **Exhibit "B"** attached hereto are deemed raised by the filing of a Notice of Appearance in response to the complaint and to all deemed cross-complaints. Any complaint or cross-complaint other than for implied equitable indemnity or comparative negligence, and particularly raising express indemnity claims, and any answer raising an affirmative defense not listed in **Exhibit "B"** must be separately pled. Nothing in this Order shall be deemed to alter, waive or affect any applicable chapters or provisions of Title 11 of the United States Code.

(b)   Dismissal of the complaint by Plaintiffs as to any Defendant during pendency of the litigation shall not affect claims for indemnity deemed filed by cross-complainants.

5.   **Scope of Order.** This Order, as may be modified and supplemented by further orders of this Court, shall govern all further discovery and case management. Other than as specifically set forth herein, this Order shall not supersede any other Court rules applicable to discovery not contemplated by this Order.

3

6.   **Discovery Master and Mediator.**   Keith W. Hunter ("Hunter") is hereby selected and appointed Discovery Master and Mediator in this action, with all of the applicable powers and authority granted hereby and pursuant, respectively, to Rule 16, *Pre-trial conferences, scheduling, management,* Hawai'i Rules of Civil Procedure, and Rule 12.2, *Alternative Dispute Resolution,* Rules of the Circuit Courts.   The proceedings before Discovery Master and Mediator Hunter shall be conducted pursuant to the: (1) Protocols Governing Discovery attached hereto as Exhibit "C" and (2) Mediation Rules, Procedures & Protocol of Dispute Prevention & Resolution, Inc. attached hereto as **Exhibit "D"**, which exhibits are incorporated herein by reference, as may be modified from time to time by the written agreement of all parties.   Discovery Master and Mediator Hunter shall be compensated at his customary hourly rate for his services (currently $350.00 per hour) and for costs reasonably and necessarily incurred, plus GET, and the parties shall each pay an equal share of such fees and costs, or shall pay a share as may be directed and/or ordered by Discovery Master and Mediator Hunter. Discovery Master and Mediator Hunter shall invoice the parties' counsel directly for his fees and costs.

7.   **Stay on Discovery.**   *Discovery will proceed as set forth in this Order.*   All discovery other than the discovery contemplated by this Order, shall be stayed until after mediation has been terminated by any party, except:   (1) for good cause demonstrated on application to Discovery Master Hunter; and (2) as provided in this and any future orders approved by the Court. This stay does not apply to discovery of non-parties. Unless agreed to by all parties, the stay on discovery shall be lifted upon termination of mediation proceedings by any party.

4

8.   Production of Documents.

(a)   The term "document" has the same meaning as the term "writing" as defined in the Hawaii Rules of Civil Procedure, and is meant to be all inclusive.

(b)   Within sixty (60) days of the date of this Order, or the filing of a Notice of Appearance, whichever is later, each party shall provide all non-privileged documents in its possession, custody or control pertaining to the planning, approval, permitting, development, design, construction, supplying of labor, materials and/or repairs/maintenance of the subject property, or otherwise relating to the claims made herein, including defective product manufacturing and design claims, that are relevant or reasonably calculated to lead to the discovery of admissible evidence in accordance with Rule 26(b)(1) of the Hawaii Rules of Civil Procedure. A general index of all documents produced will be provided with each production.

(c)   On the date of production, any party withholding documents on the basis of privilege, or for any other reason, shall provide each other party with a general list of those documents being withheld, identifying each such document by subject, date, addressor, addressee, document number and briefly stating the reason for withholding such document (e.g., attorney-client privilege, attorney-work product, trade secret, etc.).

(d)   Each party shall be given a letter or number designation. Each document is to be Bates stamped, numbered, and given the appropriate letter or number designation. The current designations are as follows:

HKP; COLHKP; COTHKP; VJLHKP; KNOXHKP & WJEHKP = Plaintiffs

S = Defendants Stanford Carr Development

As new parties enter the case, Plaintiffs shall provide them with their appropriate designation, and advise them that all documents produced shall be numbered sequentially with the

5

designation assigned. It is the responsibility of the appearing party to contact Plaintiffs to receive their designation.

(e)     Later problems or questions which arise concerning these procedures shall be addressed to the Discovery Master Hunter for resolution.

9.     Insurance/Subrogation Interrogatories

(a)     Within thirty (30) days of the date of this Order, or the filing of a Notice of Appearance, whichever is later, each party, excluding Plaintiffs, shall serve on Plaintiffs and all other parties, answers verified under oath pursuant to HRCP 33, to the insurance/subrogation interrogatories attached hereto as **Exhibit "E"**. In addition, each party shall produce as part of its production of documents as set forth in Paragraph 8 herein, complete copies of all potentially applicable policies, including all endorsements, riders and/or exhibits. Any insurance policies withheld from this production shall be identified as set forth in 8 (c) above.

(b)     If any party to this litigation is named as an additional insured, a complete copy of this policy, including all additional insured certificates concerning any party to this case and/or endorsements, must be produced to the other parties.

(c)     All parties have an affirmative obligation to update, amend or supplement their insurance/subrogation/collateral source information upon learning of any change in carrier position or upon discovery of any additional insurance policies or information not previously disclosed. Any party may apply to the Court for an order requiring another party to produce a copy of its insurance policies.

10.     Scope of Work Interrogatories. Within sixty (60) calendar days of this Order, or the filing of a Notice of Appearance, whichever is later, each party, other than Plaintiffs, shall serve on Plaintiffs and all other parties, answers verified under oath pursuant to HRCP Rule 33,

6

Case 1:15-cv-00170-LEK-KSC   Document 1-4   Filed 05/08/15   Page 9 of 31   PageID #: 103

to the Scope of Work Interrogatories, attached hereto as **Exhibit "F"**. As part of their response to the Scope of Work Interrogatories, each responding party will also produce all documents in their possession, in the manner prescribed in Paragraph 8 herein, which will assist Plaintiffs in identifying each design professional, contractor, sub-contractor and manufacturer involved in the construction of the Project and the scope of their work. To the extent a party is unable to provide a complete response to the Statement of Work Interrogatories within sixty (60) days, said party shall have a continuing obligation to provide information as it becomes known, *and shall issue a Supplemental Response to the Scope of Work Interrogatories.* Any party shall have the right to request supplementation *to any other party's response to the Scope of Work Interrogatories.* Any supplemental response shall be due within thirty (30) days of the request.

11.   **Privilege as to Discussions and Meetings.** No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.

No writing that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.

All communications, negotiations, or settlement discussions by and between participants in the course of mediation or a mediation consultation shall remain confidential.

Evidence otherwise admissible or subject to discovery outside of mediation or a mediation consultation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation or a mediation consultation.

12.   **Investigation and Destructive Testing.**   Unless otherwise agreed by all parties, once Plaintiffs have served their Statement of Claims, Defects, and Damages set forth in Paragraph 14 herein, Defendants and third-party defendants shall conduct coordinated investigations and destructive testing, and shall use their best efforts to agree upon the dates they desire to conduct investigations or destructive testing of the subject property.  Plaintiffs will provide access to common areas and make reasonable efforts in good faith to provide Defendants and third-party defendants with reasonable access to units for purposes of coordinated and joint inspection and testing. If the parties are unable to agree upon the dates they desire to conduct destructive testing or inspections of the subject property, the parties shall meet and confer in attempt to reach an agreement.  If no agreement is reached, the parties shall request Discovery Master Hunter's assistance in setting deadlines for investigation and destructive testing of the Project.  Responding Parties shall use their best efforts to conduct and complete destructive testing between a Monday and a Friday, and shall use their best efforts to provide Plaintiffs with at least thirty (30) business days notice in order to coordinate access to the Project.  Counsel and experts for each party in the case may attend to observe.  Prior to any additional deconstructive testing, if any, Plaintiffs shall provide reasonable advance written notice to the other parties.

13.   **Status Conferences.**  The Court may order status conferences as the Court deems appropriate.   At such conferences, counsel shall be prepared to discuss and agree upon compliance with this Order, discovery schedules, site inspections, early settlement conferences, disclosure of experts, exchange of expert reports, depositions of experts, and depositions of other

8

witnesses. Parties who are not in compliance with all parts of this Order are subject to issue and monetary sanctions to be imposed by the Court.

14.   **Plaintiffs' Preliminary Statement of Claims, Defects and Damages.**  Plaintiffs have provided to Defendants copies of its experts' preliminary reports prepared to date and which are identified in **Exhibit "G"**, subject to the provisions of this Order and HRE Rule 408. Plaintiffs will provide to Defendants preliminary cost of repair estimates with regard to the Villas, Cottages and Colony within approximately 60 days of entry of this Order, and as to the common areas, upon receipt of same. Within one hundred-twenty (120) days of the filing of this Order, Plaintiffs shall serve upon counsel a "Preliminary Statement of Claims, Defects and Damages" alleged to exist at the Project ("Plaintiffs' Preliminary Statement of Claims"). Plaintiffs' Preliminary Statement of Claims shall include a list of alleged defects which are known to Plaintiffs as of the filing of this Order, which shall include a description of the alleged defects sufficient to inform the Defendants of the nature and locations of the defects and the identity of the affected unit or units and/or portions of the Project. Discovery Master Hunter shall determine if additional information is needed to adequately inform the Defendants of the nature and location of the defects, and if so, make appropriate discovery orders accordingly.

15.   **Defense Response to Plaintiffs' Preliminary Statement of Claims.**  To the extent possible, Defendants and third-party defendants shall issue a joint response to Plaintiffs' Preliminary Statement of Claims. The joint response shall mirror the Plaintiffs' Preliminary Statement of Claims in form. To the extent the Defendants and third-party defendants are unable to agree on any part of the response to Plaintiffs' Preliminary Statement of Claims, each Defendant and third-party defendant shall serve an individual Response to Plaintiffs' Preliminary Statement of Claims addressing the specific issue or claim upon which agreement could not be

reached. All responses to Plaintiffs' Preliminary Statement of Claims, joint and individual, shall be served no later than one hundred-twenty (120) days after service of Plaintiffs' Preliminary Statement of Claims or Plaintiffs' response to the joint request for supplemental answers to interrogatories or Supplemental Statement of Claims, if one was requested, or on a later date agreed to by all parties; Defendants reserve the right to request a reasonable amount of additional time to respond, which Plaintiffs shall not unreasonably refuse to grant; in the event of a disagreement, the parties agree to submit the issue to Discovery Master Hunter.

All expert reports relied upon in preparing the joint and/or individual response shall be attached to the response and served on all parties. All responses, including expert reports, shall be final and binding for purposes of mediation only. Defendants and third-party defendants shall be limited at the time of mediation to the defenses set forth therein. In the event of a failed mediation, all responses and expert reports will not be final or binding. However, all responses and expert reports may be used by any of the parties for other purposes permitted by Court rule or the Hawaii Rules of Civil Procedure. Specifically, all responses and expert reports can be used for any purpose connected with discovery or trial and can be commented on if its contents change before the deposition of the generator of the statement. This Order extends to amended or supplemental reports provided to the defense before expert discovery is open. Should it be determined that additional information is needed, the Court may order supplemental reports to be prepared.

16.   **Responsive Pre-Trial Statements.** Responsive Pre-Trial Statements shall be due no later than one hundred-twenty (120) days following the production of Plaintiffs' Preliminary Statement of Claims and its experts' preliminary reports.

17.   Repairs by Plaintiffs.   Plaintiffs shall provide thirty (30) calendar days prior written notice to all appearing counsel before performing any necessary repairs at the subject property, except that Plaintiffs may perform emergency repairs, so long as written notice is given to all parties within 5 business days after Plaintiffs' counsel is made aware of such repairs.   If such timely notice is not given, all evidence obtained by Plaintiffs, including any and all findings, analysis, and opinions of Plaintiffs and its consultants and experts, based on or derived from such repairs may be barred in the Court's discretion from use at trial.   Plaintiffs will make all best efforts to save any removed materials.   Defendants will have access to all such materials upon request.   Regular maintenance necessary for the daily operation of the subject property is excluded from these notice provisions.

18.   Disclosure of Experts.   A statement disclosing the experts each party may call at trial shall be made pursuant to Rule 12 of the Rules of the Circuit Courts.

19.   Settlement Discussions.   Settlement conferences shall be held in accordance with the Rules of the Circuit Courts, Rule 12.1.

DATED:  Wailuku, Maui, Hawai'i,   5/16/13

WILLIAM M. McKEON
KERI C. MEHLING
TYLER P. BERDING
Attorneys for Plaintiffs
The Association of Apartment Owners of
the Hawaii Kai Peninsula and Board of
Directors of the Association of Apartment
Owners of the Hawaii Kai Peninsula

[SIGNATURE PAGE FOLLOWS]

11

DATED: Honolulu, Hawai'i, \_\_\_\_\_MAY 13 2013_____

_____
CID H. INOUYE
KRISTI L. ARAKAKI
Attorneys for Defendants
Peninsula Hawaii Kai, LLC, Hearthstone,
Inc. and Stanford Carr Development, LLC

APPROVED AND SO ORDERED: MAY 24 2013

JEANNETTE H. CASTAGNETTI ( SEAL )

_____
JUDGE OF THE ABOVE-ENTITLED COURT

The Association of Apartment Owners of The Hawaii Kai Peninsula and Board of Directors of the Association of Apartment Owners of The Hawaii Kai Peninsula, an unincorporated association, by its Board of Directors v. Peninsula Hawaii Kai, LLC, a Hawaii limited liability company; Civil No. 10-1-1751-08 (JHC); CASE MANAGEMENT ORDER RE PLEADINGS, DISCOVERY, PRE-TRIAL AND SETTLEMENT MATTERS

EXHIBIT "A"

## JOINDER IN CASE MANAGEMENT ORDER RE PLEADINGS, DISCOVERY, PRE-TRIAL AND SETTLEMENT MATTERS

The undersigned, representing _____, a party to the above-entitled case that had not appeared at the time the original Case Management Order Re Pleadings, Discovery, Pre-Trial And Settlement Matters ("Order") was filed or had otherwise not joined said Order, with the full consent of the above-named party, hereby agrees to the terms set forth in the Order as though the undersigned had been an original signatory to the same.

_____

Counsel for _____

Dated _____

13

EXHIBIT "B"

AFFIRMATIVE DEFENSES

The following separate, affirmative defenses, are alleged to the Complaint and to the Cross-Complaint and to each Cause of Action thereof:

1.    NO CAUSE OF ACTION STATED. The complaint and cross-complaint do not state facts sufficient to constitute a cause of action against this answering defendant.

2.    COMPARATIVE NEGLIGENCE. The Plaintiffs' or cross-complainant's own carelessness and negligence may have proximately contributed to the events and damages complained of, if any there were, and, if so, either bars or proportionately reduces any potential recovery to said plaintiffs or cross-complainant.

3.    ASSUMPTION OF RISK. The Plaintiffs may have assumed the risk, if any there was, in connection with the matters referred to in the pleading, and recovery is therefore barred or proportionately reduced to the extent of such assumption.

4.    ALTERATION OF PRODUCT. The Plaintiffs or cross-complainant or others may have altered the product involved, proximately causing the events and damages, if any there were, and recovery is therefore barred or proportionately reduced accordingly.

5.    MISUSE OF PRODUCT. The Plaintiffs or cross-complainant or others may have improperly used or improperly maintained the product involved herein, proximately causing the events and damages, if any there were, and recovery is therefore barred or proportionately reduced accordingly.

6.    NO PRIVITY. The Plaintiffs or cross-complainant is barred from recovery for breach of warranty because of lack of privity.

7.    **FAILURE TO MITIGATE DAMAGES.**  The Plaintiffs or cross-complainant has failed or neglected to use reasonable care for protection and to minimize the losses and damages, if any there were, and recovery is therefore barred or proportionately reduced accordingly.

8.    **ACTIVE AND PASSIVE CONDUCT.**  If it is determined that this answering defendant was negligent, said negligence was secondary and passive, as contrasted with the active and primary negligence of other parties to this lawsuit, and therefore, Plaintiffs or cross-complainant is not, as a matter of law, entitled to recovery from this answering defendant on any theory of indemnity.

9.    **APPORTIONMENT.**  If the matters and damages alleged in the complaint were proximately caused by the conduct of more than one party, any recovery must be apportioned as to the fault of each party.

10.    **SPOILATION OF EVIDENCE.**  The Plaintiffs or cross-complainant, either intentionally or negligently, has failed to preserve the primary evidence relevant to this litigation, thus failing to give this answering defendant an opportunity to inspect said evidence, thereby severely damaging and prejudicing a defense.  Plaintiffs or cross-complainant, therefore, should be barred from introducing secondary or lesser evidence, and any recovery should be diminished accordingly.

11.    **EQUITABLE INDEMNITY.**  The principals of comparative equitable indemnity should be applied by the Court where appropriate, despite the absence of cross-complaints specifically requesting same.

12.    **DOCTRINE OF UNCLEAN HANDS.**  The Plaintiffs and cross-complainant are barred by virtue of conduct causing the alleged damages, under the doctrine of unclean hands.

15

13.   NO SPECIAL RELATIONSHIP.  No relationship existed between Plaintiffs and cross-complainants and this answering defendant which would give rise to indemnity.

14.   ACCORD AND SATISFACTION.  Plaintiffs are barred from maintaining this action against Defendants by reason of accord and satisfaction of the claims upon which the action is based.

15.   CONTRIBUTORY NEGLIGENCE.  Plaintiffs are precluded from recovery by reason of their own negligence, which negligence was the sole cause of or greater than the negligence, if any, of Defendants.

16.   ESTOPPEL.  Plaintiffs' claims are barred by the doctrine of estoppel.

17.   CONSIDERATION.  Plaintiffs' claims are barred by the doctrine of failure of consideration.

18.   LACHES.  Plaintiffs' claims are barred by the doctrine of laches.

19.   LICENSE.  Defendants had license to take the actions upon which Plaintiffs' complaint is based.

20.   PAYMENT OF CLAIMS.  Plaintiffs are barred from maintaining this action against Defendants by reason of payment of the claims upon which the action is based.

21.   RELEASE.  Plaintiffs' claims are barred by the doctrine of release.

22.   RES JUDICATA.  Defendants intend to rely on the defense of res judicata.

23.   STATUTE OF FRAUDS.  Plaintiffs' claims are barred by the statute of frauds.

24.   STATUE OF LIMITATIONS.  Plaintiffs' claims are barred by the provisions of the applicable statute of limitations.

25.   WAIVER.  Plaintiffs' claims are barred by the doctrine of waiver.

26.   ACT OF GOD.  Defendants rely upon the defense of the Act of God.

16

27.    **INTERVENING OR SUPERSEDING CAUSESS.**  The damages sustained by Plaintiffs, if any, resulted from intervening or superseding causes.

28.    **INDISPENSABLE PARTIES.**  Plaintiffs' claims are barred by reason of their failure to join indispensable parties.

29.    **CONTRACTUAL REMEDIES.**  Plaintiffs' claims are barred as they failed to exhaust their contractual remedies and/or first to breach the contract.

30.    **CONTRACTOR REPAIR ACT.**  Plaintiffs' claims are barred as they have failed to comply with HRS Chapter 672E.

31.    **STANDING.**  Plaintiffs lack standing to bring these claims.

32.    **LEGAL AUTHORITY.**  Plaintiffs' claims are barred as they have exceeded their statutory or other legal authority.

33.    **HRCP RULE 17.**  Plaintiffs' claims are barred as they are in violation of HRCP Rule 17.

34.    **ARBITRATION.**  Plaintiffs' claims are barred as they should be arbitrated.

35.    **MITIGATION.**  Plaintiffs have failed to mitigate their damages.

## EXHIBIT C

## PROTOCOL GOVERNING DISCOVERY

The following procedures shall be followed on any request to Discovery Master and Mediator Hunter for an order of relief:

1. Any request for an order or other relief shall be in writing to the Discovery Master and Mediator Hunter and must be shown as copied to all counsel. If the request is by email, an original order also must be forwarded to the Discovery Master and Mediator Hunter for signature.

2. In a written request for an order or other relief, a specific deadline, or at least five days after the date of service of the request, shall be established by which any other counsel may forward any objections or comments regarding the request to the Discovery Master and Mediator Hunter. All objections or comments must be served on the Discovery Master and Mediator Hunter and all counsel at least two days before the date on which the Discovery Master and Mediator Hunter will rule on the request. The request and any objections or comments shall be served by email and overnight mail.

3. Any objections shall be made to the originating counsel with a copy to all counsel and the Discovery Master and Mediator Hunter. All objections or comments should be in writing and sent via fax and overnight mail. Phone messages and voice mail messages left with the Discovery Master and Mediator Hunter lead to confusion, mistakes and the possibility that the objection will not be noted or heard.

4. All requests for orders or other relief made to the Discovery Master and Mediator Hunter will be held for the specified time period to allow for any objections or

18

comments. The Discovery Master and Mediator Hunter then will review each request and any objections thereto, and render a decision. If an order is issued, it will be returned to the originating counsel for execution by the Judge, filing with the Court and service on all parties.

# EXHIBIT D

## MEDIATION RULES, PROCEDURES & PROTOCOL OF DISPUTE PREVENTION & RESOLUTION, INC.

in effect July 1, 1995 © 1998

### Table of Contents

| | | |
|---|---|---|
| I. | AGREEMENT OF PARTIES TO SUBMIT MATTERS TO CONFIDENTIAL MEDIATION/CONCILIATION/FACILITATION | 19 |
| II. | INITIATION & COMMENCEMENT OF MEDIATION | 19 |
| III. | SELECTION & APPOINTMENT OF MEDIATOR | 19 |
| IV. | PROTOCOL AND CRITERIA FOR SERVICE OF DPR MEDIATOR | 19 |
| V. | NOTICE OF MEDIATION PROCEEDINGS | 20 |
| VI. | SUBMISSION OF DOCUMENTS AND OTHER MATERIALS | 20 |
| VII. | THE DUTIES AND OBLIGATIONS OF THE MEDIATOR | 20 |
| VIII. | PRIVACY AND CONFIDENTIALITY | 21 |
| IX. | RECORD OF THE MEDIATION PROCEEDING | 21 |
| X. | CLOSURE OF THE MEDIATION PROCEEDING | 21 |
| XI. | EXEMPTION FROM LIABILITY | 21 |
| XII. | FEES, EXPENSES, DEPOSITS & REFUNDS | 22 |

Case 1:15-cv-00170-LEK-KSC   Document 1-4   Filed 05/08/15   Page 23 of 31   PageID #: 117

*I. Agreement of Parties to Submit Matters to Confidential Mediation/Conciliation/Facilitation*

In any matter in which the parties, by previous contractual agreement or by direct submission, have provided for mediation, neutral facilitation, conciliation or other third party settlement procedures pursuant to the Dispute Prevention & Resolution (DPR) Rules, Procedures and Protocols for Mediation, they shall be bound by these Mediation Rules, Procedures & Protocols. These Rules, Procedures & Protocols shall constitute a portion of the parties' overall agreement to participate in third party settlement procedures under the auspices of DPR.

*II. Initiation & Commencement of Mediation*

The parties to an existing dispute or controversy may initiate a mediation proceeding by:

(a) submitting a fully executed Submission to ADR form to DPR which includes the names, addresses, telephone numbers of all parties and counsel involved in the dispute or controversy and which describes the nature of the dispute and the remedy(s), relief sought; or (b) submitting a letter agreement or written stipulation to DPR which contains all of the above-referenced information. If no previous agreement to submit a matter to mediation exists, a party or parties may request that DPR invite the voluntary participation in a mediation/facilitation/conciliation proceeding of the other party(s). As a neutral ADR administrator, DPR will contact all relevant parties to educate them about the mediation process and seek their voluntary participation. DPR may also convene a meeting of the parties in order to provide a forum for the exploration of applicable procedures and the creation of an appropriate submission agreement.

*III. Selection & Appointment of Mediator*

Because selection and appointment of a qualified and objective neutral is vital to the *effectiveness* of any ADR proceeding, DPR provides parties with a variety of selection/appointment options: (a) parties may stipulate to the appointment of any member of DPR's Distinguished Panel of Neutrals, or (b) parties may consider all of the names on DPR's Distinguished Panel of Neutrals and select a neutral by way of the preference method (striking unacceptable names and rank ordering acceptable names) or the alternative strike-off procedure (alternately striking names until a single name remains), or (c) if the mediation agreement provides for the selection of a particular neutral or a specific selection methodology, that protocol shall be followed, or (d) the parties may stipulate that DPR appoint the neutral from among its Distinguished Panel of Neutrals.

*IV. Protocol and Criteria for Service of DPR Mediator*

Any person designated to serve as a neutral Mediator, Facilitator or Conciliator under these Rules, Procedures and Protocols shall do so in strict compliance with "Resolution Endorsing the *Guidelines for Hawai'i Mediators*" dated July 11, 2002. Any person designated to serve as a third party neutral under these procedures shall disclose in writing to DPR (and through DPR to the parties) any circumstances, relationships or conditions which could create the impression or presumption of partiality or bias. DPR shall immediately solicit the parties' comments on any written disclosure and, if the parties agree, replace the neutral and appoint another qualified

21

neutral. If the parties do not agree that a substitute neutral should be appointed, DPR shall review the matter and issue a binding determination. Any person appointed to serve as a third party neutral under these Rules, Procedures and Protocols who has a social or personal relationship with a party or counsel or any other interest in the proceeding may serve only with the written consent of all parties. If any third party neutral appointed pursuant to these Rules, Procedures and Protocols shall for any reason be unwilling or unable to fully carry out the responsibilities and duties of the office for which he/she was appointed, DPR shall declare the office vacant and proceed to appoint another neutral.

## V. Notice of Mediation Proceedings

The appointed neutral(s) shall establish the schedule for the initial and all subsequent mediation sessions. To the greatest extent possible, DPR will provide the parties and the neutral with written notice of all mediation proceedings. The parties may conduct the mediation in the offices of DPR (1003 Bishop Street, Pauahi Tower Suite 1155, Honolulu, Hawaii), the offices of the duly-appointed neutral, or at any other location which is agreeable to the parties. If the parties are unable to agree on a venue or location, DPR and the neutral will determine an appropriate venue and location.

## VI. Submission of Documents and Other Materials

The appointed neutral may request that each party submit a confidential pre-mediation statement or memorandum which sets forth (a) the legal and factual issues, (b) the claims and defenses, (c) the most recent settlement demands and offers, if any, (d) settlement positions, if any, and (e) the present status of any related proceeding(s). During the course of the mediation process, the Mediator may request that the parties provide additional information in order to insure that all of the issues and the interests and positions of the parties are clearly understood.

## VII. The Duties and Obligations of the Mediator

Mediators do not have the authority to issue decisions, enforce discovery, or impose conditions or settlement terms on the parties. The primary function of the Mediator is to help the parties reach a mutually acceptable resolution of their dispute. In order to accomplish this objective, Mediators may conduct joint sessions and private caucuses with some or all of the parties. Mediators may also make recommendations to the parties about possible settlement terms; however, the Mediator's recommendations are advisory in nature and are not binding upon the parties. Mediators have the authority to (a) establish the mediation schedule, (b) require a recess in the proceedings, (c) request the parties' permission and consent to obtain technical or procedural expertise as the case may warrant, (d) request that parties impose a "no communications" rule (e.g. a "gag order") on an ongoing mediation matter and (e) declare an impasse, if in the estimation of the Mediator, further mediation proceedings are not likely to lead to or enhance the likelihood that a resolution of the controversy can be reached.

## VIII. Privacy and Confidentiality

The process of mediation is by its nature a private proceeding. DPR and the neutral(s) appointed by DPR are obligated at all times to maintain the privacy of (a) the nature of and parties to a dispute, (b) the status of any ongoing ADR proceedings, and (c) the terms of settlement, if any, that were or may be reached in the mediation. Persons having a direct interest in the mediation proceeding may attend joint and private mediation sessions (only those private sessions that are specifically designated by the Mediator). Any other person or persons who wish to attend and/or participate in the mediation proceeding may do so only with the express permission of all of the other parties and with the authorization of the Mediator. Mediation proceedings are governed, in part, by Rule 408 of the Hawaii Evidence Code. This rule acknowledges the inadmissibility of compromises and offers of compromise in any subsequent administrative, arbitral or judicial forum. Any confidential information that is disclosed by the parties or their witnesses to the Mediator during the course of a mediation proceeding shall be held in confidence by the Mediator. Any and all records, reports, exhibits, memoranda or other documents which are submitted to the Mediator in confidence (for purposes of the mediation) shall be held in confidence by the Mediator. No Mediator serving under these Rules, Procedures, and Protocol shall be compelled to produce his or her notes of the proceeding or any other records or documents which were submitted to the Mediator during the course of the mediation proceeding. Mediators serving under these Rules, Procedures, and Protocols shall not be compelled to testify as to any matters or issues relating to the mediation and may not voluntarily agree to testify in any proceeding which arises from or relates to the mediation proceeding or the parties thereto.

## IX. Record of the Mediation Proceeding

Because the mediation process is private and confidential no record of the proceeding may be made by or on behalf of any participant (i.e. stenographic, tape recording, video recording, etc.).

## X. Closure of the Mediation Proceeding

The parties and/or the Mediator may close the mediation proceedings as follows: (a) the parties agree to the terms of and sign a binding and enforceable settlement agreement, or (b) the parties enter into and the appointed neutral signs a Stipulated Award of Arbitrator, or (c) the Mediator declares that an impasse exists, or (d) one or more of the parties withdraws from the mediation proceeding and the remaining parties elect not to proceed, or (e) one or more of the parties is stayed from proceeding in mediation by an order from an appropriate court, and the remaining parties elect not to proceed.

## XI. Exemption from Liability

Neither Dispute Prevention & Resolution, Inc. nor the DPR appointed neutral are necessary parties to any arbitral, judicial or administrative proceeding which arises from or relates to the mediation proceeding or the parties thereto. By agreeing to these Rules, Procedures and Protocols, the parties acknowledge that neither DPR nor the DPR appointed neutral is or shall be liable for any act or omission that occurs in relation to the administration and/or conduct of the mediation proceeding under these Rules, Procedures and Protocols.

23

*XII. Fees, Expenses, Deposits & Refunds*

DPR and the DPR appointed neutral will charge a single negotiated hourly or daily fee on each case. In order to assure the highest degree of objectivity and independence, DPR will negotiate and administer all arrangements for compensation between the parties and the DPR Neutral. The DPR/neutral hourly or daily fee covers the compensation of the neutral as well as all other costs normally associated with the administration and conduct of an ADR proceeding (e.g. hearing room charges, case administration expenses, phone and fax charges, etc.) Outpocket-expenses incurred by the DPR neutral in the course of the mediation proceeding (e.g. transportation, lodging, meals, etc.) will be borne equally by the parties unless all parties agree to a different allocation. DPR/Neutral will assess the Hawaii General Excise Tax.

DPR will require each party to submit in advance of the proceeding a deposit for the anticipated DPR/neutral fees and expenses. All funds deposited with DPR are held in trust. DPR is responsible for issuing payment(s) to the neutral(s) and any refunds which may due to the parties at the conclusion of the case.   DPR and the appointed neutral reserve the right to suspend services at any time due to insufficient deposits or nonpayment.

Please contact DPR at (808) 523-1234 with any questions or to obtain additional information about our services.

## Dispute Prevention & Resolution, Inc.
1003 Bishop Street, 1155 Panahi Tower,
Honolulu, Hawaii 96813
Phone: (808) 523-1234 • Fax: (808) 599-9100 •
e-mail: keithhunter@dprhawaii.com
Website: www.dprhawaii.com

EXHIBIT "E"

## INSURANCE INTERROGATORIES

PROPOUNDING PARTY:   Plaintiffs

RESPONDING PARTY:    All Defendants

INTERROGATORY NO. 1:

For any policies of insurance which you maintained from the date of one year prior to your involvement in the Project through the present, identify the following:

(If more than one carrier, answer for each potential carrier and policy.)

    (a)    Name of insurance carrier;

    (b)    Type of coverage (e.g., OCIP, wrap, excess, primary, etc.);

    (c)    Policy No.;

    (d)    Policy Period;

    (e)    Whether the policy provided broad form coverage (i.e., does the policy contain language providing coverage for the work of the named insured as well as work performed (by) or "in behalf of" the name insured by other subcontractors or parties?);

    (f)    The limits of coverage for each type of coverage contained in the policy; whether policy limits are diminished by defense and costs, and the remaining aggregate limit of the policy;

    (g)    The name, address and telephone number of each named insured who is a party to this litigation;

    (h)    The name, address and telephone number of each additional insured; and

    (i)    The name, address and telephone number of the insured's insurance broker(s) during the relevant time periods.

25

INTERROGATORY NO. 2

For each policy identified in response to Interrogatory No. 1 above, please state whether the carrier is defending with a reservation of rights.

INTERROGATORY NO. 3

For each policy identified in response to Interrogatory No. 1 above, please state whether coverage has been denied.

INTERROGATORY NO. 4

Are you self-insured under any statutes for damages, claims or actions which have arisen out of the Project?

    (a)    If so, what is your self-insured retention?

INTERROGATORY NO. 4

For each policy, is it an exhausting policy?

    (a)    If so, what are the remaining limits on the policy?

    (b)    How many separate claims are currently pending against the policy?

   c)    Phone:

9.   State what work or services were subcontracted.

10.   If you did subcontract any of your work to another, was the subcontract in writing?

11.   Please provide the name, address and telephone number of the person most knowledgeable regarding the work and/or services performed by YOU at the SUBJECT PROPERTY.

12.   Please provide the name, address and telephone number of the person most knowledgeable regarding the negotiations for and contracting for services YOU performed at the SUBJECT PROPERTY.

13.   Please provide the name, address and telephone number of the current owner, partner, managing agent, or employee who is most knowledgeable regarding the labor and/or services YOU performed at the SUBJECT PROPERTY.

14.   State the name, address and telephone number of each person on your behalf who performed any maintenance or repair work of any part of the SUBJECT PROPERTY following initial construction work on the property.

15.   For each person identified in response to Interrogatory No. 14, describe with particularity the complete nature, extent and scope of any repair performed at the SUBJECT PROPERTY including the location(s) of such repair.

16.   Are you a corporation? If so, state:

   a)    The name stated in the current articles of incorporation;

   b)    All other names used by the corporation during the past ten years and the dates each was used;

b)   The dates each was used;

c)   The state and county of each fictitious name filing;

d)   The address of the principal place of business.

23.   Within the past five years, has any public entity in Hawaii registered or licensed your business or the principal of your business?  If so, for each license or registration:

a)   Identify the license or registration;

b)   State the name of the public entity;

c)   State the date of issuance and expiration;

d)   State the inclusive dates within which your license was suspended or revoked for any reason.

## EXHIBIT "G"

1.   Neumann Sloat Blanco-Colony Report dated 1/10/11, Revised 1/20/12, Updated 3/20/12 and Revised 1/15/13;
2.   Neumann Sloat Blanco-Cottages Report dated 1/10/11, Revised 1/12/12, Updated 3/20/12 and Revised 1/15/13;
3.   Neumann Sloat Blanco- Villas Report dated 1/10/11, Revised 1/12/12, Updated 3/20/12 and Revised 1/15/13;
4.   Neumann Sloat Blanco- Common Elements Report dated 1/24/12.
5.   Liberty Building Forensics Group –Villas Supplemental Report 1/18/13
6.   Liberty Building Forensics Group –Cottages Supplemental Report 1/18/13
7.   Liberty Building Forensics Group-Colony Supplemental Report 1/18/13
8.   Chock Wind Load Report 5/20/12
9.   Weidig Geotechnical Report Villas 3/28/12
10.   Weidig Geotechnical Report Cottages 3/26/12
11.   Weidig Geotechnical Report Seawall 4/6/12
12.   Weidig Geotechnical Report on the Massey Residence Garage Unit 346A dated 11/14/12

Case 1:15-cv-00170-LEK-KSC   Document 1-5   Filed 05/08/15   Page 1 of 6     PageID #: 126

5

OGOMORI & YOSHIMOTO, LLP

| NATHAN H. YOSHIMOTO | #6352-0 |
| nyoshimoto@hi-lawyers.com | |
| DONNA A.O. YOSHIMOTO | #6234-0 |
| dyoshimoto@hi-lawyers.com | |
| JASON H. FIEMAN | #9882-0 |
| jfieman@hi-lawyers.com | |
| TREVOR N. TAMASHIRO | #9584-0 |
| ttamashiro@hi-lawyers.com | |

201 Merchant Street, Suite 2440
Honolulu, Hawaii 96813
Telephone: (808) 695-4500
Facsimile: (808) 695-4599

Attorneys for Defendant
MV&P INTERNATIONAL INC.

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA, a Hawaii nonprofit corporation, by its Board of Directors, | CIVIL NO. 10-1-1751-08 (JHC) (Contract; Construction Defect; Other) DEFENDANT MV&P INTERNATIONAL, INC.'S CONSENT AND ACCEPTANCE OF SERVICE OF (1) PLAINTIFFS' FIRST |
| Plaintiffs, | AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL; SUMMONS (filed on April 11, 2011); AND |
| vs. | (2) PLAINITFFS' CASE MANAGEMENT ORDER RE PLEADINGS, DISCOVERY, PRE-TRIAL AND SETTLEMENT |
| PENINSULA HAWAII KAI, LLC, a Hawaii limited liability company; HEARTHSTONE, INC., a California corporation; STANFORD CARR DEVELOPMENT, LLC, a Hawaii limited liability company; HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC., a Hawaii corporation; ROBERT M. KAYA BUILDERS, INC., a Hawaii corporation; MVE & PARTNERS, INC., a California corporation; TOFT, WOLFF, FARROW, INC., a California corporation; INTERNATIONAL ARCHITECTURAL GROUP, LLC, aka International Architectural Products, Inc., International Window-Northern | MATTERS; EXHBIITS "A"-"G" (filed May 24, 2013); CERTIFICATE OF SERVICE |

**EXHIBIT "5"**

{08223-1001-00042195-1}

California, International Window Corporation, International Window-Arizona, Inc., United States Aluminum Corporation, United States Aluminum Corporation-Illinois, United States Aluminum Corporation-Carolina, Raco Interior Products, Inc., International Extrusion Corporation, International Extrusion Corporation-Texas, and/or International Aluminum Corporation (collectively "AIG"); FORTIFIBER CORPORATION dba Fortifiber Building Systems Group SIKA CORPORATION dba Sika Corporation U.S.; MV&P INTERNATIONAL INC.; and DOES 7-250,

Defendants.

DEFENDANT MV&P INTERNATIONAL, INC.'S CONSENT AND ACCEPTANCE OF SERVICE OF (1) PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL; SUMMONS (filed on April 11, 2011); AND (2) PLAINTIFFS' CASE MANAGEMENT ORDER RE PLEADINGS, DISCOVERY, PRE-TRIAL AND SETTLEMENT MATTERS; EXHBIITS "A"-"G" (filed May 24, 2013)

Defendant MV&P INTERNATIONAL, INC. ("MV&P), identified as a Doe Defendant

herein, through its counsel Nathan Yoshimoto, Esq., hereby consents to and accepts service

effective as of May 8, 2015, the following: (1) Plaintiffs' First Amended Complaint For

Damages; Demand For Jury Trial; Summons (filed on April 11, 2011) ("FAC"); and (2)

Plaintiffs' Case Management Order Re Pleadings, Discovery, Pre-Trial And Settlement Matters;

Exhibits "A" – "G" (filed on may 24, 2013).

\

\

\

\

\

\

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA, a Hawaii nonprofit corporation, by its Board of Directors, | CIVIL NO. 10-1-1751-08 (JHC) (Contract; Construction Defect; Other) |
| Plaintiffs, | CERTIFICATE OF SERVICE |
| vs. | |
| PENINSULA HAWAII KAI, LLC, a Hawaii limited liability company; HEARTHSTONE, INC., a California corporation; STANFORD CARR DEVELOPMENT, LLC, a Hawaii limited liability company; HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC., a Hawaii corporation; ROBERT M. KAYA BUILDERS, INC., a Hawaii corporation; MVE & PARTNERS, INC., a California corporation; TOFT, WOLFF, FARROW, INC., a California corporation; INTERNATIONAL ARCHITECTURAL GROUP, LLC, aka International Architectural Products, Inc., International Window-Northern California, International Window Corporation, International Window-Arizona, Inc., United States Aluminum Corporation, United States Aluminum Corporation-Illinois, United States Aluminum Corporation-Carolina, Raco Interior Products, Inc., International Extrusion Corporation, International Extrusion Corporation-Texas, and/or International Aluminum Corporation (collectively "AIG"); FORTIFIBER CORPORATION dba Fortifiber Building Systems Group SIKA CORPORATION dba Sika Corporation U.S.; MV&P INTERNATIONAL INC.; and DOES 7-250, | |
| Defendants. | |

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a file-marked copy of the foregoing document was duly served upon the following parties at their last known address, by mailing same, postage prepaid in the United States Postal Service, or by hand-delivery addressed as follows on the date indicated below:

|  | HAND-DELIVERY | U.S. MAIL |
|---|---|---|
| WILLIAM M. MCKEON, ESQ.<br>KERI MEHLING, ESQ.<br>2145 Kaohu Street, Suite 203<br>Wailuku, HI 96793<br>  Attorney for Plaintiffs | | [X] |
| TYLER P. BERDING, ESQ.<br>Berding & Weil LLP<br>2175 N. California Boulevard, Suite 500<br>Walnut Creek, CA 94596<br>  Attorney for Plaintiffs | | [X] |
| CID H. INOUYE, ESQ.<br>KRISTI L. ARAKAKI, ESQ.<br>H. MAXWELL KOPPER, ESQ.<br>Pacific Guardian Center, 24th Floor<br>733 Bishop Street<br>Honolulu, HI 96813<br>  Attorneys for Defendants<br>  PENINSULA HAWAII KAI, LLC,<br>  HEARTHSTONE, INC. and<br>  STANFORD CARR DEVELOPMENT, LLC | [X] | |

DATED: Honolulu, Hawaii, ___May 8, 2015___.

OGOMORI & YOSHIMOTO, LLP

_____
NATHAN H. YOSHIMOTO
DONNA A.O. YOSHIMOTO
TREVOR N. TAMASHIRO
JASON H. FIEMAN

Attorneys for Defendant
MV&P INTERNATIONAL INC.

{08223-1001-00042195-1}                    2

The acceptance of service of the above shall constitute a waiver on behalf of MV&P of

personal service in this matter required by Rule 4 of the Hawaii Rules of Civil Procedure.

DATED:  Honolulu, Hawaii,  May 8, 2015          .

OGOMORI & YOSHIMOTO, LLP

NATHAN H. YOSHIMOTO
DONNA A.O. YOSHIMOTO
TREVOR N. TAMASHIRO
JASON H. FIEMAN

Appearing Attorneys for Defendant
MV&P INTERNATIONAL INC.

6

# NEUMANN SLOAT BLANCO ARCHITECTS LLP



**ADVOCATES for the ENVELOPE**

# Hawaii Kai Peninsula Colony

## Honolulu, HI

---

## Preliminary Report

---

### Project No. 10075

January 10, 2011
Revised January 20, 2012
Updated March 20, 2012
Revised January 15, 2013
Updated April 1, 2015

**Exhibit "6"**

SLOAT000001

# Hawaii Kai Peninsula Colony

## 520 Lunalilo Home Road
## Honolulu, Hawaii

Preliminary Investigation Report

Project Number 10075

January 10, 2011
Revised January 20, 2012
Updated March 20, 2012
Revised January 13, 2013
Updated April 1, 2015

Prepared For:

Tyler Berding, Esq.
Berding & Weil LLP
2175 N California Blvd, Ste 500
Walnut Creek, CA 94596

Prepared By:

Austin Sloat AIA
Neumann Sloat Blanco Architects LLP
292 Red Hill Avenue, Ste A
San Anselmo, CA 94960

**Exhibit "6"**

SLOAT000002

# Hawaii Kai Colony

Introduction.................................................................................................1

Project Description.......................................................................................2

Exterior Cladding .......................................................................................3
    Fiber Cement Siding .............................................................................................3
    Sheathing at Fiber Cement Siding ........................................................................3
    Direct-Applied Exterior Finish System (DEFS) ...................................................4
    Water Resistive Barrier........................................................................................6
    Railing Wall Caps ...............................................................................................7
    Exterior MDF Trim.............................................................................................7

Windows and Doors....................................................................................8
    PVC Windows - Structural .................................................................................8
    PVC Windows - Installation ...............................................................................9
    Steel Rated Windows..........................................................................................9
    Window Flashing ..............................................................................................10
    Flashing Adhesive Degradation..........................................................................11
    Window Weeps .................................................................................................11
    Window Operation............................................................................................12
    Sliding Glass Door Screens................................................................................12
    Insulated Glass Units ........................................................................................13

Roofs .........................................................................................................13
    Unadhered Laps.................................................................................................13
    Wrinkled Finish Ply ..........................................................................................14
    Inadequate Flashing Detailing ...........................................................................14
    Lead Vent Jack Flashing ....................................................................................15
    Roof Leaks........................................................................................................16
    Base Flashing at Trim ........................................................................................16
    Counterflashing .................................................................................................17
    Pitched Concrete Tile Roofs..............................................................................18
    Rain Gutter Attachment ....................................................................................19
    Plumbing Vent Location and Height...................................................................19
    Holes in HVAC Support Frames :.......................................................................19

Waterproofing ...........................................................................................20
    Podium Waterproofing ......................................................................................20

SLOAT000003

Planter Waterproofing .................................................................................21

Traffic Coatings .........................................................................................23

Courtyard Exit Stairs...................................................................................24

Interior and Thermal Envelope .......................................................................25

Shower Pan and Drain ................................................................................25

Tub Surrounds ...........................................................................................27

Sheet Vinyl.................................................................................................27

Cracked Tile...............................................................................................28

Laundry Room Ventilation ...........................................................................28

Master Bath Ventilation...............................................................................29

Vapor Barrier Position .................................................................................29

Noise Transmission ....................................................................................30

Missing Insulation.......................................................................................30

Cracks at Interior Finishes ...........................................................................31

Mechanical, Plumbing, and Electrical ..............................................................31

Water Hammer ...........................................................................................31

Air Conditioning Performance ......................................................................31

General Plumbing .......................................................................................32

Fire Sprinkler Coverage ...............................................................................33

Exterior Recessed Light Fixtures ...................................................................33

Accessibility ................................................................................................34

Fair Housing Act.........................................................................................34

Accessible Route Through Site .....................................................................35

Accessible Route Into Unit...........................................................................35

Accessible Route Through Unit.....................................................................37

Backing for Grab Bars .................................................................................37

Adaptable Kitchen ......................................................................................37

Accessible Unit Features ..............................................................................38

Figures

Photos

Reports

The top of the railing and planter walls where these fixture are typically installed are not protected by waterproofing and any water intrusion through the precast caps can result in water intrusion in to the fixture body.

## Evaluation

The light fixture are rated for exterior use but the embedded fixture boxes are not meant to be installed in a wet environment. The fixtures are inadequately protected and many of them have failed.

## Recommendations

Replace corrosion damaged fixtures in coordination with waterproofing repairs.

# 7. Accessibility

## 7.1. Fair Housing Act

### Observations

Sheet G1-00.2 notes under the Code Summary heading "This project shall conform to the requirements of the Fair Housing Act accessibility guidelines..."

All units at the Colony are defined as covered units under the Fair Housing Act (FHA) as the Project was designed and built after March 13, 1991; each building is more than four units; and each unit is accessible by elevator and is on a single level.

There are numerous requirements related to FHA compliance but the basic requirements are that each building is on an accessible route through the site; that each unit has an accessible route to and through it; and that within each unit there are certain accessible and/or adaptable features. Typically accessible routes are those that comply with ANSI A117.1-86[11] which is referenced in the Fair Housing Act Design Manual.

### Evaluation

The Fair Housing Act is federal legislation and it is incumbent on the designers and builders to comply with the applicable accessibility requirements.

### Recommendations

Where deficiencies in compliance exist they should be corrected.

---

[11] Compliance with any version of ANSI A117.1 is considered a safe harbor.

Hawaii Kai Colony #10075

April 1, 2015
Page 34

SLOAT000038

## 7.2.  Accessible Route Through Site

Observations

Buildings 6 and 7 at the Colony have access from the on-grade sidewalk to their main podium levels with a concrete walk extending up on each side of the sloped landscape are between the two buildings.  Building 7 has an additional ramp section.  The two walks each have sections where the slope exceeds 5%.

Building 8 has access from the on-grade sidewalk to the main podium level by way of a lift.

At all three buildings the accessible route connects to sidewalks at a vehicular way that have a cross slope exceeding 2% and lacking a warning texture.

Evaluation

The accessible route through the site includes sidewalks, ramps, curb cuts, and walks connecting parking, amenities, and public transportation with the covered buildings.

An accessible route becomes a ramp when the slope is between 5% and 8.33%.

The maximum allowable cross slope along an accessible route is 2%.  Warning textures complying with ANSI 117.1-86 Section 4.27.5 must be provided when an accessible route meets a vehicular way without a curb.

Recommendations

Remove and replace approximately three sections of flatwork at one of two walks[12] along the landscaped area between Buildings 6 and 7 so that a 5% slope is not exceeded.  Remove accessible signage from noncompliant walk.

Remove and replace sidewalk area at grade where it meets vehicular way between the three buildings and replace with compliant sidewalk with curbing, curb cuts, and tactile warning.

## 7.3.  Accessible Route Into Unit

Observations

Primary unit entrances do not meet FHA accessibility requirements.  Many of the unit thresholds are visibly too high above the landing surface.  We measured the entry threshold height at unit 7311.  The total height from the exterior finish surface to the top of the threshold was 1-5/8 inches.  The first component of the threshold, and extension, was not beveled at a 1:2 slope or less.  Unit 7311 has a

---

[12] Only one of the two walks needs to be compliant as either one can serve both buildings.

flush threshold condition where the threshold components meet the exterior walkway surface.

The primary unit entry thresholds are shown correctly on details 2 and 3 of sheet A-62.42.

At the secondary doors to unit lanais the maximum level difference from the interior finished floor and the exterior surface is 4 inches. The threshold height is still limited to 3/4 inch. Where there is lanai access through swing doors it appears that the condition is largely compliant. Where access is solely provided through sliding glass doors, like unit type 4, the interior threshold height is too great as the IWC sliding glass doors have a tall interior leg that sits more than an inch above the interior floor surface.

## Evaluation

Primary entrances to units along the accessible route must comply with the following requirements: maximum of 1/2 inch height difference from exterior impervious surface to interior finished floor, and a maximum 3/4 inch tall threshold with beveled slope no greater than 1:2. The 3/4 inch height is from the interior, meaning that from the exterior approach a maximum of 1-1/4 inch height is allowed with the proper bevel.

The exterior landing at the primary entrance can slope no more than 1/8 inch per foot.

At unit plan type 4 there is no accessible route to the unit lanais as required as the sliding glass door thresholds are too high.

Spot cross slope measurements were taken at the walkways in front of each unit throughout the Colony. Thirty-five percent of podium level units had spot cross slopes in excess of 2%. Almost thirty-nine percent of 2nd, 3rd and 4th floor units had spot cross slopes in excess of 2%.

## Recommendations

-- Remove waterproofing and topping in front of each primary unit entrance as well as adjacent siding where required to maintain adequate clearance. Remove any noncompliant threshold parts. Install new sloped topping and traffic coating so that applicable standards are met. Reinstall siding to match.

Remove all podium level topping slabs where part of an accessible path and replace with new concrete to match with compliant cross slopes.

At unit plan 4 remove and replace one sliding glass door with a unit that will provide a compliant access to the lanai.

### 7.4.   Accessible Route Through Unit

Observations

All areas of the units must be accessible by a 36 inch wide route. The width is permitted to be reduced to 32 inches nominal clearance at doorways. It appears that the units generally comply with these requirements.

Evaluation

It appears that the units were properly designed for accessible routes and maneuverable space.

Recommendations

None at this time.

### 7.5.   Backing for Grab Bars

Observations

FHA Guidelines do not require that grab bars be installed. They do require, however, that structural backing be installed to accommodate future grab bar installation. Sheet A-40.3 indicates locations at the water closets, baths, and showers for backing. We have not verified that this backing was installed as designed.

Evaluation

We have no reason to believe that reinforcement was not provided where designed and required. However, at all unit plan types the toilets not located in a separate compartment were designed with a countertop extension over the top of the toilet reservoir. The countertop, backsplash and mirror are located in the area that a grab bar would be installed as shown on detail 1/A-40.3. So while reinforcement may have been provided, grab bars cannot be installed in the required locations without significant alternation.

Recommendations

Verify that backing was installed as designed. Remove, modify, and reinstall vanity countertop, backsplash and mirror where it extends over toilet.

### 7.6.   Adaptable Kitchen

Observations

Note 3.F on sheet A-40.3 reads "base cabinets directly under the kitchen sink area, including toe board and shelving, must be removable without special

knowledge or tools, to provide clearance for a wheelchair. Flooring must be installed beneath such countertop."

Evaluation

This would only be a requirement for FHA purposes at certain narrow "U" shaped kitchens, a condition that does not exist at the Colony. This requirement may apply to other overlapping accessibility requirements for specific units which we have not been able to verify.

Recommendations

None at this time.

### 7.7.   Accessible Unit Features

Observations

The electrical plans typically do not indicate heights for switches, receptacles and controls. Most outlets, receptacles, and controls appear to be mounted at appropriate heights. We have not, however, made an exhaustive evaluation.

Evaluation

Switches, receptacles, and controls such as thermostats all must be mounted at accessible heights and in accessible areas unless alternatives are provided.

Electrical receptacles typically have to be mounted 15 inches minimum above the finished floor. Switches and controls typically can be no more than 48 inches from the finished floor. There must also be a clear 30 inch by 48 inch space at the switch, outlet, or control to allow access.

It may be that where outlets are installed that appear to be noncompliant there are others in the proximity that are and provide an acceptable alternative.

Recommendations

None at this time.

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF HAWAI'I

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA, a Hawaii nonprofit corporation, by its Board of Directors, | CIVIL NO. _____ (Contract; Construction Defect; Other) |
| Plaintiffs, | |
| vs. | CERTIFICATE OF SERVICE |
| PENINSULA HAWAII KAI, LLC, a Hawaii limited liability company; HEARTHSTONE, INC., a California corporation; STANFORD CARR DEVELOPMENT, LLC, a Hawaii limited liability company; HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC., a Hawaii corporation; ROBERT M. KAYA BUILDERS, INC., a Hawaii corporation; MVE & PARTNERS, INC., a California corporation; TOFT, WOLFF, FARROW, INC., a California corporation; INTERNATIONAL ARCHITECTURAL GROUP, LLC, aka International Architectural Products, Inc., International Window-Northern California, International Window Corporation, International Window-Arizona, Inc., United States | |

Aluminum Corporation, United States
Aluminum Corporation-Illinois, United
States Aluminum Corporation-Carolina,
Raco Interior Products, Inc.,
International Extrusion Corporation,
International Extrusion Corporation-
Texas, and/or International Aluminum
Corporation (collectively "AIG");
FORTIFIBER CORPORATION dba
Fortifiber Building Systems Group
SIKA CORPORATION dba Sika
Corporation U.S.; MV&P
INTERNATIONAL INC.; and DOES
7-250,

Defendants.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a file-marked copy of the foregoing

document was duly served upon the following parties at their last known address,

by mailing same, postage prepaid in the United States Postal Service, or by hand-

delivery addressed as follows on the date indicated below:

|  | HAND-DELIVERY | U.S. MAIL |
|---|---|---|
| WILLIAM M. MCKEON, ESQ.<br>KERI MEHLING, ESQ.<br>2145 Kaohu Street, Suite 203<br>Wailuku, HI 96793<br>Attorney for Plaintiffs |  | [X] |
| TYLER P. BERDING, ESQ.<br>Berding & Weil LLP<br>2175 N. California Boulevard, Suite 500<br>Walnut Creek, CA 94596<br>Attorney for Plaintiffs |  | [X] |

CID H. INOUYE, ESQ.                                              [X]
KRISTI L. ARAKAKI, ESQ.
H. MAXWELL KOPPER, ESQ.
Pacific Guardian Center, 24th Floor
733 Bishop Street
Honolulu, HI  96813
Attorneys for Defendants
PENINSULA HAWAII KAI, LLC,
HEARTHSTONE, INC. and
STANFORD CARR DEVELOPMENT, LLC

DATED:  Honolulu, Hawaii, May 8, 2015.

OGOMORI & YOSHIMOTO, LLP

NATHAN H. YOSHIMOTO
DONNA A.O. YOSHIMOTO
JASON H. FIEMAN
TREVOR N. TAMASHIRO

Attorneys for Defendant
MV&P INTERNATIONAL INC.

| From: | hid_resp@hid.uscourts.gov |
|---|---|
| Sent: | Wednesday, May 13, 2015 12:07 PM |
| To: | hawaii_cmecf@hid.uscourts.gov |
| Subject: | Activity in Case 1:15-cv-00170-LEK-KSC Hawaii Kai Peninsula, The, Association Of Apartment Owners Of The et al v. Peninsula Hawaii Kai, LLC et al Notice of Removal |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Hawaii

### Notice of Electronic Filing

The following transaction was entered on 5/13/2015 at 12:06 PM HST and filed on 5/8/2015

| Case Name: | Hawaii Kai Peninsula, The, Association Of Apartment Owners Of The et al v. Peninsula Hawaii Kai, LLC et al |
|---|---|
| Case Number: | 1:15-cv-00170-LEK-KSC |
| Filer: | MV&P International Inc. |
| Document Number: | 1 |

**Docket Text:**
**NOTICE OF REMOVAL by MV&P International Inc. Pursuant To 28 USC § 1331 (Federal Question) from Circuit Court of the First Circuit, Case Number CIV NO 10-1-1751-08 (PWB). filed by MV&P International Inc..**
**(Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Exhibit 4, # (5) Exhibit 5, # (6) Exhibit 6, # (7) Certificate of Service)(eps )**

**1:15-cv-00170-LEK-KSC Notice has been electronically mailed to:**

William M. McKeon    bill@msmhawaii.com, may@msmhawaii.com, rebecca@msmhawaii.com, sundra@msmhawaii.com

Cid H. Inouye    chi@opglaw.com, karen@opglaw.com

Donna A.O. Yoshimoto    dyoshimoto@hi-lawyers.com, dlb@hi-lawyers.com, myamada@hi-lawyers.com

Nathan H. Yoshimoto    nyoshimoto@hi-lawyers.com, assistant@hi-lawyers.com, dlb@hi-lawyers.com, myamada@hi-lawyers.com, usdc@hi-lawyers.com

Keri Catherine Mehling    keri@mimhawaii.com

Kristi Leiko Arakaki    kla@opglaw.com, tammy@opglaw.com

Trevor N. Tamashiro    tnt@dkpvlaw.com

Jason H. Fieman    jfieman@hi-lawyers.com

**1:15-cv-00170-LEK-KSC Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/13/2015] [FileNumber=1910605-0
] [9a1d11bdf959098a6180dc83cd705d17cadf249876e9d50d8b5cfcc36d50cc68309
01ccadb107b89b321556ecc48b747c4893e4237af6dffa1b8ec9ab11f8d14]]
**Document description:**Exhibit 1
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/13/2015] [FileNumber=1910605-1
] [887679a3c463b7b8742c41d61154844c3865a72b02942314f32074f8edcf97a8ef5
f5541a4c588ab22bad2e0d0ddce577e846326199b2eff75ad2d865fb0eac5]]
**Document description:**Exhibit 2
**Original filename:**n/a
**Electronic document Stamp:** ·
[STAMP dcecfStamp_ID=1095854936 [Date=5/13/2015] [FileNumber=1910605-2
] [357bbb39780865980db96d77a2ab85cb96c6370dbee02089da2b404c9481419b989
bd9d87b43e9097516764aad330ede41f9f0f1a0a4a73a9e04eaa2da43aa0b]]
**Document description:**Exhibit 3
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/13/2015] [FileNumber=1910605-3
] [0529231541b12b91b03df0091f367fc5db7aac3409671581a8d7364ebbc4c20b7ee
8287441c377f812d7e0d88d81ef299ee7fadd04ae424ac06ca33f942345e4]]
**Document description:**Exhibit 4
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/13/2015] [FileNumber=1910605-4
] [b0611654ab62699b1443191f5a5b839982c9e6d57d57e73e10b93ba3429ecccfe8c
bdbf6b7d9b01d0a2e7291f55d0bd08099562816360ff76b1d6c9e39d1f56b]]
**Document description:**Exhibit 5
**Original filename:**n/a
**Electronic document Stamp:**
· [STAMP dcecfStamp_ID=1095854936 [Date=5/13/2015] [FileNumber=1910605-5
] [2e731c7f9570eceb1ac4cc5a5e60b41ef470d58d4e97d1b823594e3d514d3f4765c

643ffb52bf5990883ed267416612cecff848d8d37874c6719ec5e01615429]]

**Document description:**Exhibit 6

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1095854936 [Date=5/13/2015] [FileNumber=1910605-6
] [8bd682af8cdd68a93c448a1f003f9ef13f9a06cb0dbd6fa7e25bb67367b58aa44bb
7ee56ec2cf0c1625521ba7e34df330e52c9ad0417e2fe62ae86ab97364da7]]

**Document description:**Certificate of Service

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1095854936 [Date=5/13/2015] [FileNumber=1910605-7
] [567aa9723f99f8de8f845f1f001ba3ce7b2c944e1a200dc96d9e63e7beb77893d17
f63c2598c79104bd304476d3b909f8fb9fad3417f70b8eaf93a642a5e3e65]]

**Document Selection Menu**

## Multiple Documents

To view the main document and its attachments without incurring a PACER fee, click on the hyperlinks displayed on this menu. You may incur a PACER fee to view CM/ECF documents from hyperlinks within the documents.

Select the document you wish to view.

**Document Number:** 1          9 pages          141 kb

| Attachment | Description | | |
|---|---|---|---|
| 1 | Exhibit 1 | 5 pages | 84 kb |
| 2 | Exhibit 2 | 2 pages | 25 kb |
| 3 | Exhibit 3 | 78 pages | 1.9 mb |
| 4 | Exhibit 4 | 31 pages | 0.9 mb |
| 5 | Exhibit 5 | 6 pages | 109 kb |
| 6 | Exhibit 6 | 10 pages | 134 kb |
| 7 | Certificate of Service | 3 pages | 44 kb |

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA and BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF THE HAWAII KAI PENINSULA, a Hawaii nonprofit corporation, by its Board of Directors, | CIVIL NO. 10-1-1751-08 (JHC) (Contract; Construction Defect; Other) |
| | CERTIFICATE OF SERVICE |
| Plaintiffs, | |
| vs. | |
| PENINSULA HAWAII KAI, LLC, a Hawaii limited liability company; HEARTHSTONE, INC., a California corporation; STANFORD CARR DEVELOPMENT, LLC, a Hawaii limited liability company; HAWAIIAN DREDGING CONSTRUCTION COMPANY, INC., a Hawaii corporation; ROBERT M. KAYA BUILDERS, INC., a Hawaii corporation; MVE & PARTNERS, INC., a California corporation; TOFT, WOLFF, FARROW, INC., a California corporation; INTERNATIONAL ARCHITECTURAL GROUP, LLC, aka International Architectural Products, Inc., International Window-Northern California, International Window Corporation, International Window-Arizona, Inc., United States Aluminum Corporation, United States Aluminum Corporation-Illinois, United States Aluminum Corporation-Carolina, Raco Interior Products, Inc., International Extrusion Corporation, International Extrusion Corporation-Texas, and/or International Aluminum Corporation (collectively "AIG"); FORTIFIBER CORPORATION dba Fortifiber Building Systems Group SIKA CORPORATION dba Sika Corporation U.S.; MV&P INTERNATIONAL INC.; and DOES 7-250, | |
| Defendants. | |

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a file-marked copy of the foregoing document was duly served upon the following parties at their last known address, by mailing same, postage prepaid in the United States Postal Service, or by hand-delivery addressed as follows on the date indicated below:

|  | <u>HAND-DELIVERY</u> | <u>U.S. MAIL</u> |
|---|---|---|
| WILLIAM M. MCKEON, ESQ.<br>KERI MEHLING, ESQ.<br>2145 Kaohu Street, Suite 203<br>Wailuku, HI 96793<br>Attorney for Plaintiffs | | [X] |
| TYLER P. BERDING, ESQ.<br>Berding & Weil LLP<br>2175 N. California Boulevard, Suite 500<br>Walnut Creek, CA 94596<br>Attorney for Plaintiffs | | [X] |
| CID H. INOUYE, ESQ.<br>KRISTI L. ARAKAKI, ESQ.<br>H. MAXWELL KOPPER, ESQ.<br>Pacific Guardian Center, 24th Floor<br>733 Bishop Street<br>Honolulu, HI 96813<br>Attorneys for Defendants<br>PENINSULA HAWAII KAI, LLC,<br>HEARTHSTONE, INC. and<br>STANFORD CARR DEVELOPMENT, LLC | [X] | |

DATED:  Honolulu, Hawaii, _____MAY 1 4 2015_____ .


OGOMORI & YOSHIMOTO, LLP

_____
NATHAN H. YOSHIMOTO
DONNA A.O. YOSHIMOTO
TREVOR N. TAMASHIRO
JASON H. FIEMAN

Attorneys for Defendant
MV&P INTERNATIONAL INC.